UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,                      :
                                                 :
              Plaintiff,                         :
                                                 :
vs.                                              :   Case No. 4:20-cv-00258
                                                 :
DIERBERGS ZUMBEHL, INC., a Missouri              :
corporation;                                     :
                                                 :
CAPLACO FOURTEEN, INC., a Missouri               :
corporation; and                                 :
                                                 :
                                                 :
PANERA, LLC, a Delaware limited liability        :
company;                                         :
              Defendants.                        :
_____/

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendants, DIERBERGS ZUMBEHL, INC., a Missouri corporation; CAPLACO FOURTEEN, INC., a Missouri corporation; and PANERA, LLC, a Delaware limited liability company (sometimes referred to as "Defendants"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.     Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.     Defendants DIERBERGS ZUMBEHL, INC.'s and CAPLACO FOURTEEN, INC.'s property, Dierbergs Bogey Hills Plaza, has an address of 2021 Zumbehl Road, St. Charles,

Missouri 63303 and is located in the County of St. Charles ("Bogey Hills Plaza").

3.      Defendant PANERA, LLC's restaurant, Panera Bread, is located at the Bogey Hills

Plaza, with an address of 2079 Zumbehl Road, St. Charles, Missouri 63303 ("Panera Bread").

4.      Venue is proper in the Eastern District of Missouri because the situs of the property

lies in this judicial district.   The Defendants' property and restaurant are located in and do business

within this judicial district.

5.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the

Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

6.      Defendants each own, lease, lease to, or operate a place of public accommodation,

as defined by the ADA, 42 U.S.C. § 12181(7)(B) or (E), and the regulations implementing the

ADA, 28 CFR 36.201(a) and 36.104.

7.      The Bogey Hills Plaza is a shopping center.

8.      The Bogey Hills Plaza is a place of public accommodation.

9.      Dierbergs is a grocery store.

10.      Dierbergs is a place of public accommodation.

11.      Michaels in the Bogey Hills Plaza is a sales establishment.

12.      Michaels in the Bogey Hills Plaza is a place of public accommodation.

13.      Petco in the Bogey Hills Plaza is a sales establishment.

14.      Petco in the Bogey Hills Plaza is a place of public accommodation.

15.      Panera Bread in the Bogey Hills Plaza is a restaurant.

16.      Panera Bread in the Bogey Hills Plaza is a place of public accommodation.

17.      Dressbarn in the Bogey Hills Plaza is a sales establishment.

18.     Dressbarn in the Bogey Hills Plaza is a place of public accommodation.

19.     Defendants are responsible for complying with the obligations of the ADA.

20.     Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis, weak limbs, and requires the use of a wheelchair for mobility.

21.     Mr. Nekouee travels to the St. Louis metropolitan area every three to six months to visit heavy equipment dealerships, where he assists his brother to compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

22.     Plaintiff Fred Nekouee has visited the St. Louis area near the Bogey Hills Plaza in June 2015, June 2016, September 2017, December 2017, March 2018, July 2018, September 2018, January 2019, May 2019, and September 2019.

23.     Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Bogey Hills Plaza which forms the basis of this lawsuit on July 10, 2018; January 28, 2019; May 15, 2019; and on September 15, 2019.

24.     Plaintiff bought goods at Michaels in the Bogey Hills Plaza on July 10, 2018 and on January 28, 2019.

25.     Plaintiff likes the moderately-priced goods at Michaels and plans to shop there again.

26.     Plaintiff bought goods at Petco on July 10, 2018 and on September 15, 2019.

27.     Plaintiff likes the offerings at Petco and plans to shop there again.

28.     Plaintiff bought food at Panera Bread on July 10, 2018; May 15, 2019; and on September 15, 2019.

29.     Plaintiff likes the reasonably-priced menu and healthy food at Panera Bread and

plans to buy food and dine there again.

30.      Plaintiff bought grocery items at Dierbergs on July 10, 2018; January 28, 2019; May 15, 2019; and on September 15, 2019.

31.      Plaintiff likes to buy groceries at grocery stores like Dierbergs that sell a wide array of items and fruit and snacks that he can take with him in his vehicle or back to his hotel room.

32.      Fred Nekouee plans to buy groceries at Dierbergs again.

33.      Plaintiff visited and bought goods at the Dressbarn on May 15, 2019.

34.      While traveling, the Plaintiff likes to shop at stores like the Dressbarn to buy small gifts for friends and family.

35.      The Plaintiff plans to shop at the Dressbarn again.

36.      Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at Bogey Hills Plaza, Michaels, Petco, Panera Bread, Dierbergs, and the Dressbarn since they are close to the heavy equipment dealerships he visits in the St. Louis area and are close to the airport.

37.      Fred Nekouee has definite plans to return to the St. Louis area in March 2020.

38.      For the reasons set forth in paragraphs 20 through 37 and 49 of this Complaint, Mr. Nekouee plans to return to the Bogey Hills Plaza.

39.      While moving in his wheelchair to window shop at the Bogey Hills Plaza, the Plaintiff encountered changes in level of the walking surface of greater than 0.5 inches in front of Fratelli's Ristorante, Pickelman's, First Bank, and Panera Bread.

40.      The Plaintiff has encountered architectural barriers at the subject property.   The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability to access the property due to excessively steep slopes in parking spaces for the

disabled, in access aisles and of walking surfaces, and have impaired his use of the restrooms in in Michaels, Petco, and Panera Bread at the Bogey Hills Plaza.

41.      The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

42.      The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

43.      The running slope of the access ramp in front of Petco is steeper than 1:12.

44.      Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

45.      The cross slope of the walking surface in front of Dierbergs is steeper than 1:48.

46.      The Plaintiff encountered barriers to access in the men's restroom in Panera Bread, so he tried using the women's restroom in Panera Bread, in which women's restroom he also encountered a barrier to access.

47.      The Plaintiff is deterred from visiting the Bogey Hills Plaza, even though the Bogey Hills Plaza is close to the heavy equipment dealerships he visits in the area, because of the difficulties he will experience in the lobby, accessible room 235, parking lot, access aisles, walking surfaces (sidewalks), and restrooms until the property is made accessible to him in a wheelchair.

48.      Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 54 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

49.     Fred Nekouee desires to visit the Bogey Hills Plaza not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

50.     The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

51.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

52.     Preliminary inspections of the Bogey Hills Plaza have shown that violations exist.

53.     Physical conditions that exist at the Property are accurately described in each subsection designated with a romanette "(i)" in each lettered subparagraph of paragraph 54 below.

54.     The violations that Fred Nekouee personally encountered or observed on his visit to the Bogey Hills Plaza include, but are not limited to:

**PARKING AREA**

a.  (i) In the parking lot, the parking spaces identified as van accessible in front of Michaels are less than 132 inches wide.  (ii) The parking spaces identified as van accessible in front of Michaels are less than a minimum of 132 inches wide when the access aisle is 60 inches wide, in violation of Federal Law 2010, ADAAG § 502.2.  (iii) Due to the narrow width of these van accessible parking spaces, the Plaintiff had difficulty unloading from and loading back into his vehicle when he parked in these spaces.  (iv)

The action required to restripe this section of the parking lot is easily accomplishable and able to be carried out without much difficulty or expense.

   b.    (i) The sidewalk in front of Fratelli's Ristorante has a change in level greater than 0.5 inches.   (ii) The walking surface in front of Fratelli's Ristorante shown in the photograph below has a change in level greater than 0.5 inches and a change in level of about 1 inch, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this change of level and it made his wheelchair unstable.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.



   c.  (i) The sidewalk in front of Pickleman's has a change in level greater than 0.5 inches.   (ii) The walking surface in front of Pickleman's shown in the photographs below

has a change in level greater than 0.5 inches and a change in level of about 1 inch, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this change of level and it made his wheelchair unstable.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.





d.   (i) The sidewalk in front of First Bank at the Bogey Hills Plaza has a change in level greater than 0.5 inches.   (ii) The walking surface in front of First Bank at the drain pipe shown in the photographs below has a change in level greater than 0.5 inches and a change in level of about 2 inches, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this change of level and he required assistance to maneuver around it to prevent his wheelchair from overturning.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.





e.   (i) The sidewalk in front of Panera Bread at the Bogey Hills Plaza has a change in

level greater than 0.5 inches.  (ii) The walking surface in front of Panera Bread at the

interface between the concrete pad and the pavers shown in the photographs below has a

change in level greater than 0.5 inches and a change in level of about 1 inch, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this change of level and it stopped the forward movement of his wheelchair, and he required assistance to move over it.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.





f.    (i) In the parking lot, the running slope of the middle section of the access aisle serving the disabled parking spaces in front of Petco is steeper than 1:48 and steeper than 3.1%.   (ii) The running slope of the middle section of the access aisle serving the disabled parking spaces in front of Petco is steeper than 1:48 and is as steep as about 7%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this running slope in this access aisle and it made his wheelchair unstable. (iv) The action required to reduce the running slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

g.    (i) In the parking lot, the cross slope of the middle section of the access aisle serving the disabled parking spaces in front of Fratelli's Ristorante is steeper than 1:48 and

steeper than 3.1%.   (ii) The cross slope of the middle section of the access aisle serving the disabled parking spaces in front of Petco is steeper than 1:48 and is as steep as about 7%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this cross slope in this access aisle and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

h.   (i) The running slope of the sidewalk in front of Shogun at the Bogey Hills Plaza is steeper than 1:20 (5%).   (ii) The running slope of the walking surface in front of Shogun at the Bogey Hills Plaza is steeper than the 1:20 (5%) and is steeper than 10%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) Due to the steep slope of this walking surface in front of Shogun, the Plaintiff required assistance to hold and push his wheelchair while moving in his wheelchair over this section of the walking surface.   (iv) The action required to reduce the slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) The running slope of the sidewalk in front of Michaels at the Bogey Hills Plaza is steeper than 1:20 (5%).   (ii) The running slope of the walking surface in front of Michaels at the Bogey Hills Plaza is steeper than the 1:20 (5%) and is steeper than 9%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) Due to the steep slope of this walking surface in front of Michaels, the Plaintiff required assistance to hold and push his wheelchair while moving in his wheelchair over this section of the walking surface.   (iv) The action required to reduce the slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) The cross slope of the sidewalk in front of Dierbergs is steeper than 1:48.   (ii)

The cross slope of the walking surface in front of Dierbergs is steeper than 1:48 and is steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The cross slope of this walking surface made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i) The cross slope of the sidewalk in front of Half Price Books at the Bogey Hills Plaza is steeper than 1:48.   (ii) The cross slope of the walking surface in front of Half Price Books is steeper than 1:48 and is steeper than 4%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The cross slope of this walking surface made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

l.   (i) The cross slope of the sidewalk in front of Dressbarn at the Bogey Hills Plaza is steeper than 1:48.   (ii) The cross slope of the walking surface in front of Dressbarn is steeper than 1:48 and is steeper than 4%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The cross slope of this walking surface made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

m.   (i) The cross slope of the sidewalk in front of Petco is steeper than 1:48.   (ii) The cross slope of the walking surface in front of Petco is steeper than 1:48 and is steeper than 4%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The cross slope of this walking surface made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be

carried out without much difficulty or expense.

n.   (i) The running slope of the access ramp in front of Petco is steeper than 1:12 and is steeper than 9%.   (ii) The running slope of the access ramp in front of Petco is steeper than 1:12 and is steeper than 14%, in violation of Federal Law 2010, ADAAG § 405.2. (iii) While moving in his wheelchair to shop at Petco, the Plaintiff encountered the steep running slope of this access ramp and he required assistance to ascend and to descend this ramp.   (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

o.   (i) The running slope of the access ramp in front of the Vision Center at the Bogey Hills Plaza is steeper than 1:12 and is steeper than 9%.   (ii) The running slope of the access ramp in front of the Vision Center is steeper than 1:12 and is steeper than 11%, in violation of Federal Law 2010, ADAAG § 405.2.   (iii) While moving in his wheelchair, the Plaintiff encountered the steep running slope of this access ramp and he required assistance to ascend and to descend this ramp.   (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

p.   (i) The running slope of the access ramp in front of Fantastic Sams at the Bogey Hills Plaza is steeper than 1:12 and is steeper than 9%.   (ii) The running slope of the access ramp in front of Petco is steeper than 1:12 and is steeper than 9%, in violation of Federal Law 2010, ADAAG § 405.2.   (iii) While moving in his wheelchair, the Plaintiff encountered the steep running slope of this access ramp and he required assistance to ascend and to descend this ramp.   (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty

or expense.

q.     (i) The running slope of the access ramp in front of Michaels is steeper than 1:12 and is steeper than 9%.  (ii) The running slope of the access ramp in front of Petco is steeper than 1:12 and is steeper than 10%, in violation of Federal Law 2010, ADAAG § 405.2.   (iii) While moving in his wheelchair to shop at Michaels, the Plaintiff encountered the steep running slope of this access ramp and he required assistance to ascend and to descend this ramp.  (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

r.     (i) The slope of the curb ramp sides or flares of the access ramp in front of the Vision Center is steeper than 1:10.  (ii) The slope of the curb ramp sides or flares of the access ramp in front of the Vision Center is steeper than 1:10 and is steeper than 19%, in violation of Federal Law 2010, ADAAG § 406.3.   (iii) Due to the steep slope of these curb ramp flares, the Plaintiff had to maneuver his wheelchair to avoid them and to prevent his wheelchair from overturning.  (iv) The action required to reduce the slope of these curb ramp flares is easily accomplishable and able to be carried out without much difficulty or expense.

s.     (i) The slope of the curb ramp sides or flares of the access ramp in front of the Michaels is steeper than 1:10.  (ii) The slope of the curb ramp sides or flares of the access ramp in front of the Michaels is steeper than 1:10, in violation of Federal Law 2010, ADAAG § 406.3.   (iii) Due to the steep slope of these curb ramp flares, the Plaintiff had to maneuver his wheelchair to avoid them and to prevent his wheelchair from overturning. (iv) The action required to reduce the slope of these curb ramp flares is easily

accomplishable and able to be carried out without much difficulty or expense.

t.   (i)   In the parking lot, the access aisle serving the accessible parking spaces in front of Dressbarn does not adjoin an accessible route to Dressbarn.   (ii) The access aisle in front of Dressbarn does not adjoin an accessible route to Dressbarn, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff had to cross traffic lanes that were not marked with a crossing and he had to move in his wheelchair some distance to try and enter Dressbarn.   (iv) The action required to connect this access aisle to the accessible route to Dressbarn is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN MICHAELS**

u.   (i) The force needed to open the entrance door to the men's restroom in Michaels is more than 5 pounds.   (ii) The force needed to open the entrance door to the men's restroom in Michaels is about 9 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff required assistance in his wheelchair to open this door.   (iv) The action required to adjust the closing force of this entrance door is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the men's restroom in Michaels, the door to the accessible toilet compartment does not have a door pull on both sides of the door near the latch.   (ii) In the men's restroom in Michaels, the door to the accessible toilet compartment does not have a door pull on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull, the Plaintiff could not fully close

the door to the accessible toilet compartment when he used the toilet.  (iv) The action required to install door pulls is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) In the men's restroom in Michaels, the rear wall grab bar in the accessible toilet compartment does not extend a minimum of 12 inches on one side and 24 inches on the other side from the centerline of the toilet.   (ii) In the men's restroom in Michaels, the rear wall grab bar in the accessible toilet compartment does not extend a minimum of 12 inches on one side and 24 inches on the other side from the centerline of the water closet, in violation of Federal Law 2010, ADAAG § 604.2.   (iii) Due to the location of this rear wall grab bar, the Plaintiff had difficulty using the rear wall grab bar to transfer himself from his wheelchair to sit on the toilet.   (iv) The action required to relocate this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

x.   (i) In the men's restroom in Michaels, the side wall grab bar in the accessible toilet compartment is less than 42 inches long.  (ii) In the men's restroom in Michaels, the side wall grab bar in the accessible toilet compartment is less than 42 inches long, in violation of Federal Law 2010, ADAAG § 604.5.1.  (iii) Due to the short length of this side wall grab bar, the Plaintiff had difficulty using it to transfer himself from his wheelchair to the toilet and back again.  (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

y.   (i) In the men's restroom in Michaels, the side wall grab bar in the accessible toilet compartment does not extend a minimum of 54 inches from the rear wall.  (ii) In the men's restroom in Michaels, the side wall grab bar in the accessible toilet compartment

does not extend a minimum of 54 inches from the rear wall, in violation of Federal Law 20110, ADAAG § 604.5.1.   (iii) Due to the lack of extension from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace and properly locate this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

z.    (i) In the men's restroom in Michaels, the space between the bottom of the rear wall grab bar and the top of the toilet tank is less than 1.5 inches.   (ii) In the men's restroom in Michaels, the space between the bottom of the rear wall grab bar and the top of the toilet tank is less than 1.5 inches as shown in the photograph below, in violation of Federal Law 2010, ADAAG § 609.3.   (iii) Due to narrow width of the space between the bottom of the rear wall grab bar and the top of the toilet tank, the Plaintiff had great difficulty using the rear wall grab bar in the accessible toilet compartment, and he required assistance to transfer himself from his wheelchair to the toilet.   (iv) The action required to relocate this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.



aa.   (i) In the men's restroom in Michaels, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser is not between 7 and 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of this toilet paper dispenser, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN PETCO**

bb.   (i) The force needed to open the entrance door to the men's restroom in Petco is more than 5 pounds.   (ii) The force needed to open the entrance door to the men's restroom

in Petco is about 9 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff required assistance in his wheelchair to open this door.   (iv) The action required to adjust the closing force of this entrance door is easily accomplishable and able to be carried out without much difficulty or expense.

cc.    (i) In the men's restroom in Petco, the rear wall grab bar in the accessible toilet compartment is less than 36 inches long.   (ii) In the men's restroom in Petco, the rear wall grab bar in the accessible toilet compartment is less than 36 inches long and is only about 32 inches long, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to the short length of this rear wall grab bar, the Plaintiff had difficulty using the rear wall grab bar to transfer himself from his wheelchair to sit on the toilet.   (iv) The action required to replace this grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

dd.    (i) In the men's restroom in Petco, the side wall grab bar in the accessible toilet compartment does not extend at least 54 inches from the rear wall.   (ii) In the men's restroom in Petco, the rear wall grab bar in the accessible toilet compartment does not extend a minimum of 54 inches from the rear wall and only extends about 48 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the lack of proper extension from the side wall, the Plaintiff had difficulty using the side wall grab bar to transfer himself from his wheelchair to sit on the toilet and back again.   (iv) The action required to replace this grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN PANERA BREAD**

ee.    (i) The force needed to open the entrance door to the men's restroom in Panera Bread is more than 5 pounds.   (ii) The force needed to open the entrance door to the men's restroom in Panera Bread is about 12 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff required assistance in his wheelchair to open this door.   (iv) The action required to adjust the closing force of this entrance door is easily accomplishable and able to be carried out without much difficulty or expense.

ff.    (i) In the men's restroom in Panera Bread, the restroom door pull side maneuvering clearance in a front of approach perpendicular to the doorway is blocked by the toilet compartment wall and is less than 60 inches.   (ii) This restroom door pull side maneuvering clearance in a front of approach perpendicular to the doorway is blocked by the compartment wall and is less than a minimum of 60 inches and is only about 40 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of door pull side maneuvering clearance, the Plaintiff required assistance to maneuver his wheelchair to exit the men's restroom.   (iv) The action required to reconfigure the toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

gg.    (i) In the men's restroom in Panera Bread, the accessible compartment door pull side maneuvering clearance in a latch approach perpendicular to the doorway is less than 48 inches.   (ii) In the men's restroom in Panera Bread, the accessible compartment door pull side maneuvering clearance in a latch approach perpendicular to the doorway is less than a minimum of 48 inches and is only about 41 inches, in violation of Federal Law 2010,

ADAAG § 402.2.4.   (iii) Due to this lack of adequate maneuvering clearance space, the Plaintiff had difficulty maneuvering his wheelchair to enter the accessible toilet compartment.   (iv) The action required to reconfigure this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In the men's restroom in Panera Bread, the side wall grab bar does not extend at least 54 inches from the rear wall.   (ii) This side wall grab bar in the accessible toilet compartment does not extend a minimum of 54 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the lack of adequate extension of this side wall grab bar from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this side wall grab bar is easily accomplishable ad able to be carried out without much difficulty or expense.

ii.   (i) In the men's restroom in Panera Bread, the front of the counter surface for the sink is higher than 34 inches above the floor.   (ii) In the men's restroom in Panera Bread, the front of the counter surface for the sink is higher than 34 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 606.3.   (iii) Due to the height of the front of the counter above the floor, the Plaintiff had difficulty using this sink.   (iv) The action required to lower the counter for this sink is easily accomplishable and able to be carried out without much difficulty or expense.

jj.   (i) In the men's restroom in Panera Bread, the flush control for the toilet is not mounted on the open and wide side of the clear floor space.   (ii) The flush control for this toilet is not mounted on the open and wide side of the clear floor space as shown in the photograph below, in violation of Federal Law 2010, ADAAG § 604.6.   (iii) Due to the

location of the flush control for this toilet, the Plaintiff could not flush the toilet from his wheelchair.   (iv) The action required to replace the toilet tank with a flush control on the other side is easily accomplishable and able to be carried out without much difficulty or expense.



**WOMEN'S RESTROOM IN PANERA**

kk.     (i) In the women's restroom in Panera Bread, the side wall grab bar does not extend at least 54 inches from the rear wall.   (ii) This side wall grab bar in the accessible toilet compartment does not extend a minimum of 54 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the lack of adequate extension of this side wall grab bar from the rear wall, the Plaintiff had difficulty using this side wall

grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this side wall grab bar is easily accomplishable ad able to be carried out without much difficulty or expense.

**ENTRANCE TO DRESSBARN**

ll.   (i) The threshold to the entrance door to Dressbarn is more than .75 inches high. (ii) The threshold to the entrance door to Dressbarn is more than .75 inches high and is about 1.5 inches high, in violation of Federal Law 2010, ADAAG § 404.2.5.   (iii) Due to the height of this threshold, the Plaintiff required assistance to move his wheelchair over it to enter Dressbarn.   (iv) The action required to reduce the height of this threshold is easily accomplishable and able to be carried out without much difficulty or expense.

55.   All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

56.   The discriminatory violations described in paragraph 54 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.

57.   The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' buildings and their facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

58.     Defendants have discriminated against the individual by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

59.      Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

60.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

61.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

62.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals

who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

63.      Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

64.      Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendants to alter Panera Bread, the Bogey Hills Plaza, and adjacent parking lot spaces, access aisles, and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or

procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

      c.     An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

      d.     Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*